**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, 378 North Main Avenue, Tucson, AZ 85701, <br><br> Plaintiff, <br><br> v. <br><br> DOUG BURGUM, in his official capacity as Secretary of the U.S. Department of the Interior, 1849 C Street, NW Washington, D.C. 20240, <br><br> BRIAN NESVIK, in his official capacity as Director of the U.S. Fish and Wildlife Service, 1849 C Street, NW Washington, D.C. 20240, and <br><br> U.S. FISH AND WILDLIFE SERVICE, 1849 C Street N.W. Washington, D.C. 20240. <br><br> Defendants. | Case No.    26-cv-2472 <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. Plaintiff, the Center for Biological Diversity ("Center"), brings this case challenging the failure of the U.S. Fish and Wildlife Service ("Service") to designate critical habitat for the Pearl River Map Turtle in violation of the nondiscretionary, congressionally mandated deadlines set by the Endangered Species Act ("ESA"). The agency's failure to meet these deadlines delays crucial, lifesaving protections for this threatened species.

2. The Pearl River Map Turtle is a rare and imperiled aquatic turtle that lives only in one place on earth: the Pearl River in Louisiana and Mississippi.

1

3.      The Service listed the Pearl River Map Turtle as threatened on July 12, 2024. The Service was required to designate critical habitat for the Pearl River Map Turtle concurrently with its listing or, if not then determinable, within one additional year. Despite this statutory obligation, the Service has failed to propose a rule designating critical habitat for the Pearl River Map Turtle.

4.      The Service has abrogated its nondiscretionary duty to ensure that the Pearl River Map Turtle's critical habitat is timely protected, which is necessary to avoid further decline and an increased risk of extinction, in violation of the ESA.

5.      Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated the ESA by failing to timely designate the critical habitat for the Pearl River Map Turtle and directing the Service to publish its overdue rule for critical habitat designation by a date certain.

## **PARTIES**

6.      Plaintiff, the CENTER FOR BIOLOGICAL DIVERSITY (the "Center"), is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitats. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States.

7.      The Center has more than 1.8 million supporters and 101,000 active members throughout the country.

8.      The Center brings this action on behalf of its organization, its staff, and its members who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from the Pearl River Map Turtle and its habitat. The Center's interests in protecting and recovering the Pearl River Map Turtle are directly harmed by the failure of the Service to issue a timely rule protecting its critical habitat.

9.    For example, Center member William Mitchell is a lifelong outdoor enthusiast who has lived along the Pearl River since he was a small child. Mr. Mitchell enjoys walking, hiking, paddling, and doing other recreational activities in and along the Pearl River, including at sites like Pelahatchie Bay and Creek, Pearl River State Wildlife Management Area ("WMA"), and LeFleur's Bluff State Park. Mr. Mitchell enjoys bird and wildlife watching along the Pearl River. He frequently leads monthly birding walks at Lefleur's Bluff State Park, where there is public access to the Pearl River, and he can view not only birds but also turtles and other species. He plans to continue doing these recreational activities in 2026 and 2027.

10.    Since retiring in 2018, Mr. Mitchell has devoted his time to volunteering for organizations that are focused on the enjoyment and preservation of the Pearl River, like Jackson Audubon Society and Pearl River Keeper. Mr. Mitchell has participated in annual cleanups of the Pearl River since 2017 and has acted as a Pearl River water monitor since 2018. In his capacity as a water monitor, Mr. Mitchell samples the river for water quality indicators like pollutants, turbidity, and dissolved oxygen on a monthly basis. In summer, he also monitors bacteria levels in the river on a more frequent basis. Mr. Mitchell conducts sampling by wading into the Pearl River or by accessing it from boat launches at places like Coal Bluff Park, Leake County Water Park, Old Highway 13 Bridge, and Highway 35 near Carthage, MS. He plans to continue volunteering in river cleanups and water monitoring in 2026 and 2027.

11.    Mr. Mitchell takes pleasure in learning about the natural world and teaching others about it. He earned his Master Naturalist certification in 2018. Since being certified, Mr. Mitchell has volunteered as an instructor for master naturalist courses, including classes held at the Pearl River State WMA and at Coal Bluff Park.

12.    Through these activities and as a result of having lived along the Pearl River for nearly seven decades, Mr. Mitchell has had the opportunity to view Pearl River Map Turtles in the wild. Mr. Mitchell has aesthetic and recreational interests in the Pearl River Map Turtle and the places where it lives. He derives joy from the fact that unique species like the Pearl River Map Turtle call the Pearl River home, just as he does, and live nowhere else on earth. He is concerned that the Pearl River Map Turtle is listed as a threatened species. He worries that the decline of the species impairs the biodiversity and function of the Pearl River ecosystem.

13.    Defendants' violations of the ESA's nondiscretionary mandatory deadlines have delayed protections for the Pearl River Map Turtle's critical habitat, harming the Center's members' interests in the turtles by failing to provide ESA protection for the places on which they depend for survival, which both increases their risk of extinction and decreases the likelihood that Mr. Mitchell and other Center members will encounter them in the wild. These injuries are actual, concrete injuries presently suffered by the Center's members, directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief.

14.    The relief that the Center seeks would redress these injuries by providing ESA protection for the Pearl River Map Turtle's critical habitat, thus promoting its conservation and recovery. The Center and its members have no other adequate remedy at law.

15.    Defendant, DOUG BURGUM, is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the provisions of the ESA, including decisions about the Pearl River Map Turtle. Defendant Burgum is sued in his official capacity.

16.     Defendant, BRIAN NESVIK, is the Director of the U.S. Fish and Wildlife Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Nesvik is sued in his official capacity.

17.     Defendant, U.S. FISH AND WILDLIFE SERVICE, is the agency within the Department of the Interior charged with implementing the ESA. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

## JURISDICTION

18.     This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and (g), as well as 28 U.S.C. § 1331. This Court has authority to issue declaratory and injunctive relief pursuant to the Endangered Species Act, 16 U.S.C. § 1540(g), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

19.     Venue is proper in this Court pursuant to 16 U.S.C. § 1540(g)(3)(A) because this is the judicial district in which the violation is occurring. Venue is also proper pursuant to 28 U.S.C. § 1391(e)(1) because Defendants reside in this venue and a substantial part of the events or omissions giving rise to the claim occurred in this venue.

## STATUTORY FRAMEWORK

### The Endangered Species Act

20.     The Endangered Species Act, 16 U.S.C. §§ 1531-1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

5

21.     The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id*. § 1532(16).

22.     A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." *Id*. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

23.     The ESA ensures substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. Among these protections is the requirement that the Service designate critical habitat for threatened and endangered species. *Id.* § 1533(a)(3).

24.     Critical habitat is defined as: (i) the specific areas within the geographical area occupied by the species, at the time it is listed, on which are found those physical or biological features essential to the conservation of the species and which may require special management considerations or protections; and (ii) specific areas outside the geographical area occupied by the species at the time it is listed, upon a determination by the Secretary that such areas are essential for the conservation of the species. *Id.* § 1532(5)(A).

25.     "Conservation" is in turn broadly defined to include "all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." *Id*. § 1532(3).

26.     Under the ESA's plain language, "conservation" is thus "a much broader concept than mere survival." *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 441 (5th Cir. 2001). Accordingly, the "clear" purpose of critical habitat designation "is for [the Service] to carve out

6

territory that is not only necessary for the species' survival but also essential for the species' recovery." *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.,* 16 s, 1070 (9th Cir. 2004).

27.    The ESA requires the Service to designate critical habitat for a species "concurrently with making a determination" that it is threatened or endangered – that is, at the time it is listed. *Id.* § 1533(a)(3)(A)(i). Specifically, the ESA provides:

> The Secretary, by regulation promulgated in accordance with subsection (b) and to the maximum extent prudent and determinable—
> shall, **concurrently with making a determination** under paragraph (1) **that a species is an endangered species or a threatened species, designate any habitat of such species which is then considered to be critical habitat**; and
> may, from time-to-time thereafter as appropriate, revise such designation.

*Id.* §1533(a)(3) (Emphasis added).

28.    A final regulation designating critical habitat of an endangered species or a threatened species shall be published concurrently with the final regulation implementing the determination that such species is endangered or threatened. *Id.* § 1533(b)(6)(C).

29.    This timeline may be extended for no more than one year when critical habitat is not determinable at the time of listing. *Id.* § 1533(b)(6)(C)(ii). If critical habitat is not determinable at the time of listing, the Service, "with respect to the proposed regulation to designate such habitat, may extend the one-year period specified in subparagraph (A) **by not more than one additional year, but not later than the close of such additional year the Secretary must publish a final regulation,** based on such data as may be available at that time, designating, to the maximum extent prudent, such habitat." *Id.* (Emphasis added).

30.    Designation of critical habitat is accomplished through promulgation of a final rule after public notice and comment. *See id.* § 1533(b)(6).

31.    The ESA sets forth the non-discretionary deadlines for this rule-making process. The Service must publish a final rule within one year of publishing a proposed rule designating critical habitat for public notice and comment:

> **Within the one-year period beginning on the date on which general notice is published** in accordance with paragraph (5)(A)(i) regarding a proposed regulation, **the Secretary shall publish in the Federal Register**—
> ****
> (ii) subject to subparagraph (C), **if a designation of critical habitat is involved,** either—
> (I) **a final regulation to implement such designation**, or
> (II) notice that such one-year period is being extended under such subparagraph.

*Id.* § 1533(b)(6)(A) (Emphasis added.)

32.    The failure to propose and finalize a rule designating critical habitat within the statutorily prescribed deadlines is a violation of the ESA.

33.    The failure to timely designate critical habitat also deprives a species of other substantive protections it is afforded under the ESA. For example, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* §1536(a)(2).

34.    ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; see also *id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d). All of these provisions are integral to accomplishing ESA's congressionally

8

mandated purpose of conserving endangered and threatened species. *Id.* § 1531(b). They are informed and enhanced by the designation of critical habitat.

**FACTUAL BACKGROUND**

**The Pearl River Map Turtle**

*Photo credit: USGS*

35.     The Pearl River Map Turtle *(Graptemys pearlensis)* is endemic to the Pearl River system in Mississippi and Louisiana. These rare turtles live nowhere else on earth.

36.     Map turtles are named for the beautiful and intricate patterns on their shells that often resemble a topographical map. In addition to these markings, the shape of the carapace (top half of shell) in map turtles is distinctively keeled, with knobby projections or spikes down the vertebral scutes (located down the midline of the carapace).

9

37.     Pearl River Map Turtles consume invertebrate prey like insects and mollusks. Mature female Pearl River Map Turtles, which can be twice as large as males, primarily consume Asian clams (*Corbicula fluminea*) and help control this invasive species.

38.     Pearl River Map Turtles depend on the flowing freshwater of the Pearl River. They are found in rivers and creeks with sand and gravel bottoms and dense accumulations of deadwood.

39.     Pearl River Map Turtles have never been documented in oxbow lakes or other floodplain habitats. They are notably absent from lakes and reservoirs.

40.     Pearl River Map Turtles have delayed sexual maturity, with females not reaching reproductive age for approximately ten years. They build their nests on sandbars along the riverbanks in the late spring and early summer months, where they lay small clutches of eggs.

41.     The Pearl River Map Turtle is threatened with extinction due to habitat degradation and loss from dam construction, river channelization, and degraded water quality from agricultural runoff, mining, and development. The effects of climate change (increasing temperatures, drought, sea-level rise, hurricane regime changes, and increased seasonal precipitation) are additional threats to the Pearl River Map Turtle.  It is also threatened by target shooting and collection for the pet trade.

42.     In light of the threats facing the Pearl River Map Turtle, the Center and conservation partners petitioned to list the species on April 20, 2010.

43.     Following a positive 90-day finding, the Service proposed listing the Pearl River Map Turtle as threatened on November 23, 2021. 86 Fed. Reg. 66624 (Nov. 23, 2021). At the time that listing was proposed, the Service concluded that designation of critical habitat was not prudent because of the potential for an increase in poaching. *Id.*

44.    The Service listed the Pearl River map turtle as threatened on July 12, 2024. 89 Fed. Reg. 57206 (July 12, 2024).

45.    In the final listing, the Service reevaluated the prudency determination for critical habitat based on public comment and information that was already in the public domain, indicating where the species could be found. *Id.* Consequently, the Service determined that critical habitat was prudent but not determinable at the time of listing. *Id.*

46.    The Service stated its intention to "publish a proposed rule designating critical habitat for the Pearl River map turtle in the near future." *Id.*

47.    The Service's finding that designation of critical habitat for the Pearl River Map Turtle was "prudent but not determinable," *id.*, extended the Service's deadline for designating critical habitat by "not more than one additional year." 16 U.S.C. § 1533(b)(6)(C)(ii).

48.    With the one year extension, the Service's critical habitat designation for the Pearl River Map Turtle was required by July 12, 2025. *Id.*

49.    To date, the Service has failed to issue a proposed or final rule designating critical habitat for the Pearl River Map Turtle, and such designation is overdue. *Id., see also id.* § 1533(b)(6)(A)(ii)(I).

50.    The Center provided Defendants with 60-days' notice of its intent to sue for these ESA violations, as required by 16 U.S.C. § 1540(g)(2)(C), by a December 4, 2025 letter to Defendants. The letter was also delivered to the Southeast Region Director of the U.S. Fish and Wildlife Service.

## CLAIMS FOR RELIEF

51.    Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

52.     The ESA required Defendants to publish a critical habitat designation for the Pearl River Map Turtle at the time it was listed as threatened.

53.     When Defendants decided that critical habitat was prudent but not determinable at the time of listing, they extended the period for designating critical habitat for the Pearl River Map Turtle by not more than one additional year.

54.     Despite listing the Pearl River Map Turtle as threatened in 2024, Defendants have failed to issue a proposed or final rule designating the Pearl River Map Turtle's critical habitat.

55.     The deadlines to designate critical habitat for the Pearl River Map Turtle have passed.

56.     Defendants have failed to perform their nondiscretionary duties to publish a timely final rule designating critical habitat for the Pearl River Map Turtle. 16 U.S.C. § 1533(a)(3)(A)(i), § 1533(b)(6)(C)(ii).

57.     By failing to designate critical habitat for the Pearl River Map Turtle, Defendants have abrogated their duties to ensure that the critical habitat of the Pearl River Map Turtle is timely protected to avoid an increased risk of its extinction, in violation of the ESA.

## REQUEST FOR RELIEF

60.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

i. Declare that Defendants violated the ESA by failing to timely designate the critical habitat for the Pearl River Map Turtle;

ii. Provide injunctive relief compelling Defendants to publish the critical habitat designation for the Pearl River Map Turtle in the Federal Register by a date certain;

iii. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

12

iv. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16

U.S.C. § 1540(g)(4); and

v. Provide such other relief as the Court deems just and proper.

Respectfully submitted this 15th day of July 2026.

*/s/ Daniel H. Waltz*
Daniel H. Waltz (D.D.C. No. D00424)
CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street NW, Suite 1300
Washington, DC 20005
Phone: (202) 386-6155
Email: dwaltz@biologicaldiversity.org

*/s/ Lindsay E. Reeves*
Lindsay E. Reeves (La. Bar No. 32703)
CENTER FOR BIOLOGICAL DIVERSITY
3436 Magazine Street, FRNT PMB 539
New Orleans, LA 70115
Phone: (504) 342-4337
lreeves@biologicaldiversity.org
*Pro Hac Vice* Admission Pending


*Attorneys for Plaintiff*