**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>DOUG BURGUM *et al.*,<br><br>Defendants. | Case No. 26-cv-2472 (JMC) |

# MEMORANDUM OPINION

This is a case about whether the U.S. Fish and Wildlife Service has shirked a statutory duty to timely determine the Pearl River Map Turtle's critical habitat after concluding that the Turtle was threatened in July 2024. Movant Rankin-Hinds Pearl River Flood and Drainage Control District seeks to intervene "as local government sponsor of a . . . flood-control project located in the specific river system at issue." ECF 12 at 3. With "unparalleled knowledge of the entire Pearl River basin and its hydrological and ecological features," it hopes to assist the Court in determining whether to require the Service to designate critical habitat or "whether the economic harm would outweigh the benefit." *Id.* at 11. There is no reason to doubt that the District has a stake in the Service's ultimate decision about the extent of the Turtle's critical habitat. But because that issue is not presented by this case, the District's motion to intervene is **DENIED**.[1]

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

## I. BACKGROUND

Under the Endangered Species Act (ESA), the Secretaries of the Interior and Commerce may designate species as endangered or threatened. 16 U.S.C. § 1533(a)(1). A species is threatened when there is a likelihood that it will be "in danger of extinction," *id.* § 1532(6), "within the foreseeable future," *id.* § 1532(20). The U.S. Fish and Wildlife Service "administers the ESA with respect to species under the jurisdiction of the Secretary of the Interior." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 651 (2007). When the Service publishes a "final regulation implementing the determination that [a] species is endangered or threatened," the ESA directs that "a final regulation designating critical habit" of the species "shall be published concurrently." *Id.* § 1533(b)(6)(C). This calls for a determination of the areas "essential to the conservation of the species." *Id.* § 1532(5)(A)(i)–(ii). However, if the "critical habitat of [a] species is not . . . determinable" when the species is finally classified as endangered or threatened, the Service may extend the time to designate critical habitat for a limited period. *Id.* § 1533(b)(6)(C)(ii). In designating critical habitat, the Service must act "on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat." *Id.* § 1533(b)(2). An area may be excluded from critical habitat when "the benefits of such exclusion outweigh the benefits" of inclusion, unless "failure to designate such area as critical habitat will result in the extinction of the species." *Id.*

On November 23, 2021, the Service published a notice of proposed rulemaking to designate the Pearl River Map Turtle as a threatened species. ECF 1 ¶ 43; *see also* Threatened Species Status with Section 4(d) Rule for Pearl River Map Turtle, 86 Fed. Reg. 66624 (proposed Nov. 23, 2021). It then published its final rule classifying the Turtle as threatened on July 12, 2024. ECF 1 ¶ 44;

*see also* Threatened Species Status for Pearl River Map Turtle with Section 4(d) Rule, 89 Fed. Reg. 57206 (July 12, 2024). In the final rule, the Service found that "critical habitat is prudent but not determinable at this time for the species." Threatened Species Status for Pearl River Map Turtle with Section 4(d) Rule, 89 Fed. Reg. at 57207–08. The final rule therefore indicated that the Service "intend[ed] to publish a proposed rule designating critical habitat for the Pearl River Map Turtle in the near future." *Id.* at 57208. Because the Service has not yet done so, the Center for Biological Diversity filed this action on July 15, 2026, alleging that the ESA's "deadlines . . . have passed," with Defendants "fail[ing] to perform their nondiscretionary duties to publish a timely final rule designating critical habitat." ECF 1 ¶¶ 55–56. The Center seeks a declaration that Defendants' delay violates the ESA and an injunction "compelling Defendants to publish the critical habitat designation for the Pearl River Map Turtle . . . by a date certain." *Id.* ¶ 60(i)–(ii). Defendants have not yet responded to the complaint.[2]

On August 24, 2026, the Rankin-Hinds Pearl River Flood and Drainage Control District moved for intervention as of right under Federal Rule of Civil Procedure 24(a)(2), ECF 9 at 8–12, or for permissive intervention under Rule 24(b)(1)(B), ECF 9 at 12–15. The District is a decades-old body constituted under Mississippi law and made up of representatives from the state and several cities and counties located near the Pearl River in the Jackson metropolitan area. *Id.* at 2. It is "charged with the construction, acquisition, development, operation, and maintenance of necessary facilities . . . for the purpose of protecting human health and property from potential flooding of the Pearl River." *Id.* The District represents that it is in the "final stages of approval" for a major flood-control project in its footprint. *Id.* at 5. It bases its case for intervention on its

[2] In a September 15, 2026 minute order, the Court extended Defendants' deadline to respond to the complaint to November 13, 2026.

"interests in shepherding the project forward to provide necessary flood protection" and the risk that the Turtle's critical-habitat designation will "caus[e] the project to expend significant unnecessary time and resources." *Id.* Though a recent study suggested that the project area was only "sparsely populated by the Turtles compared to other portions of the River," the District nevertheless fears its footprint will be swept up in a future critical-habitat designation. *Id.* at 6.

The Center opposes the District's intervention in any form, contending that the "District's rights would be affected only if an eventual designation of critical habitat included its project area," something that "is not part of the relief sought in this litigation." ECF 10 at 11. As a result, the Center says, the District cannot show the Article III standing or impairment of a legally protected interest that are required to intervene by right under Rule 24(a). *Id.* at 8–13. And, because the District intends to litigate "substantive questions as to whether specific areas . . . warrant designation" rather than the "narrow procedural issue" of ESA deadlines, the Center also argues that permissive intervention under Rule 24(b) is inappropriate. *Id.* at 13–14.

## II. ANALYSIS

The Court agrees with the Center on both counts. Because the District has not established a right to intervene under Rule 24(a) and the Court declines to permit intervention under Rule 24(b), the District's motion will be denied.

### A. The District Does Not Show a Right to Intervene Under Federal Rule of Civil Procedure 24(a)(2).

To intervene by right, Rule 24(a)(2) requires: (1) a timely motion; (2) demonstrating "an interest relating to the property or transaction" at issue; (3) which may be "impair[ed] or impede[d]" by disposition of the case; and (4) which is not "adequately represented by existing parties to the action." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1322–23 (D.C. Cir. 2013) (quoting *Bldg. & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)). In this

Circuit, intervenors, including intervenor-defendants like the District, must also establish their own Article III standing by showing injury-in-fact, causation, and redressability. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731–33 (D.C. Cir. 2003); *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015).[3] Generally, a showing of a threat to a legally protected interest under Rule 24(a) will suffice to "meet Article III's standing requirement," and vice versa. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *see also Crossroads*, 788 F.3d at 320 ("The standards for constitutional standing and the second factor of the test for intervention as of right are the same." (citing *Fund for Animals*, 322 F.3d at 735));

[3] As the D.C. Circuit has acknowledged, its requirement that intervenors of right must show Article III standing has been called into question by recent Supreme Court holdings. *See Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025). *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania* found error in requiring an intervenor to show independent appellate standing when it did not "pursue[] relief" that was "broader than or different from the party invoking [the] court's jurisdiction." 591 U.S. 657, 674 n.6 (2020); *see also Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) ("An intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."). And *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019), at least suggested that Article III standing requirements do not apply to intervenor-defendants like the District. *See id.* at 663 ("Because neither" participating as intervenor-defendant nor intervenor-appellee "entailed invoking a court's jurisdiction, it was not previously incumbent on [appellant] to demonstrate its standing.").

Notwithstanding these cases, the D.C. Circuit has hewed to its existing rule, continuing to require intervenors of right to independently show standing. *See, e.g.*, *Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427, 430–32 (D.C. Cir. 2021) (affirming denial of intervention of right by intervenor-defendant on standing grounds). While *Institutional Shareholder Services* noted this approach was in some "tension" with Supreme Court precedent, it did not resolve the issue. 142 F.4th at 764 n.3. Subsequent D.C. Circuit opinions have continued to note this "tension," while still indicating that intervenors must independently show standing. *See, e.g.*, *IGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025); *Clean Air Council v. EPA*, 181 F.4th 1292, 1300 n.3 (D.C. Cir. 2026). This has produced different results among judges in this District. *Compare Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 348 F.R.D. 397, 401 (D.D.C. 2025) (requiring intervenor-defendant to show standing), *with Env't Integrity Project v. Wheeler*, No. 20-cv-1734, 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (finding no standing requirement for intervenor-defendants).

Because "intervening Supreme Court precedent" does not "clearly dictate a departure from circuit law," *Bahlul v. United States*, 77 F.4th 918, 926 (D.C. Cir. 2023), this Court remains bound by Circuit precedent requiring an intervenor-defendant to show Article III standing, *see Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013); *Crossroads*, 788 F.3d at 316. Neither *Little Sisters* nor *Town of Chester* "addressed whether a putative *defendant*-intervenor must possess standing." *Las Americas*, 348 F.R.D. at 402. And given the "strict circuit standard for relying upon intervening Supreme Court precedent to abandon circuit precedent," *Saad v. SEC*, 873 F.3d 297, 311 n.3 (D.C. Cir. 2017), this Court does not read *Bethune-Hill*'s brief aside about its procedural history to clearly require breaking from the D.C. Circuit's continued approach to intervenor-defendant standing, *see Yocha Dehe*, 3 F.4th at 430. In any event, the District's reply appears to concede that it must show Article III standing. *See* ECF 12 at 3. Furthermore, based on the overlap between Article III and Rule 24(a) requirements, the Court's ultimate conclusion would not change if it is incorrect that Circuit precedent still requires the District to independently show standing.

*Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 n.5 (D.D.C. 2010) (similar); *Akiachak Native Cmty. v. U.S. Dep't of the Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) (similar); *Friends of the Earth v. Haaland*, No. 21-cv-2317, 2021 WL 5865386, at *1 n.2 (D.D.C. Dec. 11, 2021) (similar).

The Center does not dispute the timeliness of the District's motion to intervene, which was submitted about a month after the case was filed and before Defendants have responded to the complaint or the Court has taken any significant action. *See* ECF 9 at 8; *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008). Nor does the Center contend that another party will adequately represent the District's asserted interests. Instead, all the action—whether presented as an Article III or Rule 24(a) inquiry—is over the District's showing that it has a legally protected interest that may be impaired by the resolution of this case. *See* ECF 9 at 8–10; ECF 10 at 8–13; ECF 12 at 5–6, 9–10. The Court finds that the District has not established such an interest and may not, therefore, intervene under Rule 24(a).

The District maintains that it faces injury or impairment of its interests by way of "additional regulatory burdens" on "its critical flood-control project," "*in the event* the project area were designated as critical habitat for the Turtle." ECF 9 at 10 (emphasis added). It is because of that necessary caveat that the District's argument for intervention falters. Interests which provide the basis for Rule 24(a) intervention are those "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) (quoting *Smith v. Gale*, 144 U.S. 509, 518 (1892)). But here, the District's "alleged injury is based entirely on the potential substantive outcome" of the Service's critical-habitat determination, an issue "not before this Court." *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 311 (D.D.C. 2011) (quoting *In re Endangered Species Act Section 4 Deadline Litig.* (*In re ESA Litig. I*), 270 F.R.D. 1, 5 (D.D.C.

2010)); *accord Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 340 F.R.D. 1, 5 (D.D.C. 2021). As the District emphasizes, ECF 12 at 4, 6–8, the ESA requires the Service to consider economic, national-security, and other impacts when making a critical-habitat determination, 16 U.S.C. § 1533(b)(2). And the statute contemplates that those factors may lead the Service to conclude that the benefits of a given area's inclusion are outweighed by the drawbacks, so long as extinction would not result. 16 U.S.C. § 1533(b)(2). Given the District's arguments regarding the costs of designation and its assertion that its "project area impacts less than 1% of the entire known range" of the Turtle, the Service might well exclude the District's footprint if the Court directs it to make a critical-habitat determination. ECF 9 at 9. Because the District's potential harm remains "entirely contingent" on an inchoate agency decision-making process, it can show neither imminent injury under Article III nor direct and immediate impairment of a legally protected interest under Rule 24(a). *Sierra Club v. McCarthy*, 308 F.R.D. 9, 12–13 (D.D.C. 2015); *see also Defs. of Wildlife v. Perciasepe*, 714 F.3d at 1324–25 ("Article III standing requires more than the possibility of potentially adverse regulation."); *Yocha Dehe*, 3 F.4th at 431; *In re ESA Litig. I*, 270 F.R.D. at 5.

None of the Rule 24(a) cases that the District cites point toward a different outcome. *Friends of the Earth v. Haaland* granted the American Petroleum Institute's (API) unopposed motion to intervene as of right in litigation challenging the lawfulness of an oil and gas lease sale because "plaintiffs' requested relief would impact API's members' ability to acquire additional leases and develop existing ones." 2021 WL 5865386, at *2. *Natural Resources Defense Council, Inc. v. Burgum* similarly concerned the API's unopposed intervention in a challenge to the application of an ESA national-security exemption to "certain oil and gas activities in the Gulf." No. 26-cv-1116, 2026 WL 2031653, at *1 (D.D.C. July 14, 2026). Like *Friends of the Earth*, it

granted intervention as of right because the relief sought "would directly affect API's interests, as the legal framework for their operations in the Gulf would substantially change." *Id.* at *3. In other words, those cases found Rule 24(a) satisfied because API's members stood to "gain or lose by the direct legal operation and effect of the judgment" sought. *Am. Tel. & Tel. Co.*, 642 F.2d at 1292. But as explained, the District's asserted injury or impairment of interest will result not from this Court's judgment but from the Service's ultimate decision-making process, if at all. Accordingly, the District meets neither Article III nor Rule 24(a) requirements, and its motion to intervene as of right is denied.

**B. The Court Declines to Permit the District's Intervention Under Rule 24(b)(1)(B).**

A party unable to show a right to intervene may, nonetheless, participate with the Court's permission. Rule 24(b)(1)(B) provides for permissive intervention when a movant timely advances claims or defenses that share "a common question of law or fact" with "the main action."[4] "As its name would suggest, permissive intervention is an inherently discretionary enterprise," and the Court may deny permission even when Rule 24(b)(1)(B) is satisfied. *EEOC v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1046, 1048 (D.C. Cir. 1998). In deciding whether to permit intervention, the Court "must consider" the risk of undue delay or prejudice to the existing Parties. Fed. R. Civ. P. 24(b)(3). It may also "consider whether parties seeking intervention will significantly contribute to the just and equitable adjudication of the legal question presented." *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 313 (D.D.C. 2011) (quoting *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010)). The Court concludes that the District's participation would not

[4] It is "uncertain[] . . . whether standing is required for permissive intervention." *In re Endangered Species Act Section 4 Deadline Litig.* (*In re ESA Litig. III*), 704 F.3d 972, 980 (D.C. Cir. 2013). That uncertainty has perhaps increased in view of the "tension" between recent Supreme Court decisions and D.C. Circuit precedent requiring all intervenors of right to show independent standing. *Institutional S'holder Servs.*, 142 F.4th at 764 n.3. As noted, the District has not established independent standing. Assuming, however, that the District need not show standing for permissive intervention, the Court would still decline to permit it to intervene for the reasons explained.

so contribute and would instead risk unduly delaying resolution of this matter by introducing substantive issues unrelated to the discrete matter before the Court. It therefore declines to permit the District's intervention under Rule 24(b).

To start, the Court assumes that the District meets the threshold requirements of Rule 24(b)(1)(B), but it has its doubts. The District's motion was undisputedly timely, *see supra* § II.A, but it is not clear that the District presents a claim or defense sharing "a common question of law or fact" with "the main action." This requirement is "flexible," and there need not be perfect identity of claims or defenses. *Nat'l Child.'s Ctr.*, 146 F.3d at 1046. But at least some degree of legal or factual overlap is necessary. *See Mass. Sch. of L. at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997).

The Center seeks a declaration that the Service "violated the ESA by failing to timely designate the critical habitat for the Pearl River Map Turtle and [an injunction] directing the Service to publish its overdue rule." ECF 1 ¶ 5. "This would mean," the Center agrees, that "the Service would publish a proposed rule . . . designating the areas of the Pearl River that meet the requirements for critical habitat under the ESA." ECF 10 at 9. At issue, then, is "Defendants' compliance with the statutory deadlines set by the Endangered Species Act." *Id.* at 1. Meanwhile, the District's briefs demonstrate that it seeks to litigate something else—the appropriate scope of the Service's ultimate determination. *See, e.g.*, ECF 12 at 4 (describing "interest in arguing for the . . . ecological appropriateness of a determination that the benefits of designating a critical habitat" are "outweighed by the economic and other relevant costs"); ECF 9 at 6 (describing interest in "provid[ing] the Court . . . accurate science relevant to the decision whether the project area is even appropriate for inclusion in such a critical habitat"). If the Center prevails in this litigation, the extent of the designated critical habitat will be a question for the Service in the first

instance—something the District appears, at times, to acknowledge. *See* ECF 12 at 3–4 ("[The Service] has the statutory obligation to balance all relevant factors and determine whether a certain geographic area is subject to exclusion from a critical habitat designation . . . ." (citing 16 U.S.C. § 1533(b)(2))).

Given the "flexible reading of Rule 24(b)," the Court does not resolve the question of whether the District satisfies its threshold requirements and will assume that it does. *Nat'l Child.'s Ctr.*, 146 F.3d at 1046. But, for the same reasons that the Court questions the extent to which the District presents a common question of law or fact, it concludes that the District's permissive intervention would risk undue delay without "significantly contribut[ing] to . . . adjudication of the legal question presented." *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. at 313. The District's briefs suggest it seeks to relitigate issues aired in its comment on the notice of proposed rulemaking which led to the Turtle's designation as threatened—whether the Turtle is, in fact, a unique species, whether the designation was based on accurate Turtle population counts, and whether human activity has affected Turtle populations. *See* ECF 9 at 7; ECF 12 at 10; *see also* ECF 9-4. Whatever the merits of the District's contentions on these issues, they are more likely to delay and distract than they are to assist the Court with the question of ESA deadlines presented in this case. *See Env't Integrity Project v. McCarthy*, 319 F.R.D. 8, 17 (D.D.C. 2016).

This is far from the first time that an entity with a stake in the final outcome of a regulatory process has sought to permissively intervene in litigation that merely asks to get the regulatory ball rolling. Those efforts have been regularly turned away, and the result is no different here. *See, e.g.*, *id.*; *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. at 313; *In re Endangered Species Act Section 4 Deadline Litig.* (*In re ESA Litig. II*), 277 F.R.D. 1, 9 (D.D.C. 2011), *aff'd*, 704 F.3d 972 (D.C. Cir. 2013). The District "argue[s] persuasively" that it has "substantial expertise and a unique

perspective," *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. at 313, on the "Pearl River environment, including habitats, water quality, hydrogeology, and hydraulics," ECF 9 at 15, as well as "the economic impact of a critical habitat designation," ECF 12 at 4. That's just not what this case is about. "Rather, the Court has been asked to determine whether [the Service] has an enforceable obligation" to determine the Pearl River Map Turtle's critical habitat "and, if so, whether it has breached that obligation." *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. at 313; *see also In re ESA Litig. II*, 277 F.R.D. at 9 (hunting organization's substantive expertise on species irrelevant to litigation regarding the Service's noncompliance with statutory deadline to determine species' threatened or endangered status). The District has not demonstrated that it is likely to contribute significantly to the resolution of these questions, and its apparent "desire to inject . . . substantive concerns into this procedural case" presents a real risk of undue delay. *Env't Integrity Project v. McCarthy*, 319 F.R.D. at 17. Accordingly, the District's motion for permissive intervention is denied.

## III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Rankin-Hinds Pearl River Flood and Drainage Control District's motion to intervene is **DENIED**.

A separate order accompanies this memorandum opinion.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: November 9, 2026